Case number 1-2-18-0773, Chase A. Stoltenberg v. Bancorp Inc., United States Banking, United States Financial Corporation, and Federal Savings and Loan Association of Washington, D.C. Defendants Appellees. Our hearing will be held on the plaintiff's behalf. Mr. Judge, your panel is valid. Our hearing will be held on the defendant's appellees. Mr. Conner, your team, yes. All right, gentlemen, are you both ready to proceed? Yes, ma'am. Counsel, when you're ready. First of all, of course, I'll ask you to go into a lengthy explanation, but I won't, so I'm willing to whatever limit to be rebuttaled. It's fine. Just proceed. Well, I said it all, I guess, and read it all, and I will just stand for questions if you have any. And, again, I cannot tell you I apologize so much. Your client is charged with knowledge of contracts that he enters into, correct? Yes, sir. He's also charged with knowledge of the law, correct? He's chargeable with that? Yes. I mean, under contract law in the case. Sure. Yes, sir. Thank you. And these documents that were part of the record, I mean, many of them have several references to the age 70-and-a-half. You would agree with that, correct? To which one? Many of the documents in the record have several references to the age 70-and-a-half. Oh, yes, absolutely. So why is your client not charged with knowledge that something should be happening when he turns 70-and-a-half? I agree. I think he should be, and I would just stand there as to correct. The federal law requires that the year following, you're reaching 70-and-a-half, and then that April. So it's misstated in their contracts. No, I think the law changed after these were – the law changed in 1986, and these were under him beforehand, correct? These were done in the 80s. Either way, I mean, it's either the year after 70-and-a-half or the year of 70-and-a-half. Absolutely. When something should happen. Right. I agree. I mean, tell me why the bank is involved here. Well, I looked at it as quick as I can, but it's a contract. Everything I can find, it's a contract. Two IRAs, $2,000 each. Simple contract. We give you our money. We're going to come in from time to time, maybe, and get our money. And at the end of the day, we want our money. He went in to Mr. Stojanko's man to get his money, and at 79, we don't have any records. Good luck. And the rest of it is in the record. But, I mean, he tried. He got us. We're at the FDIC. We're at the state. We're possibly at the bank. And they're filing suit, and I thought it was just a simple breach of contract case. And if you want, but the thesis of mine is, if I may, the statute of limitations. It seems to me it's as simple as that. And everything I could find anywhere is, that's the contract. We give you the note. You should give it back to us when we request it. You didn't. Their excuse is that, well, you claim you never had any money. We're not going to say anything whether we give it to you or not. You claim you didn't. But at 70 to have, something should have happened, and it didn't. So you're charged with that notice. Therefore, assuming we didn't give you the money, assuming, they never admit that, then you have breached your statute of limitations because you filed your lawsuit 14 years later. And that's what it is. And my argument is, well, you can't use the statute of limitations as a shield or a sword or whatever backwards you want to look at it. And my argument is to prove their case, I think, they have to have facts and knowledge. And there is none there. And the reason I say that is every day I look, I'd say I was reading the Wheaton papers this morning before I came, embezzlement's all over the place. There was a letter from Wheaton a year ago, 30,000. Someone comes in, it's an elderly couple. They sit there. They're not going to be here. The money disappears constantly in the news. I'm not saying that happened here, but the problem is the bank is asserting that, well, we must have breached our contract duty to you to disperse the funds at 7 1⁄2. But there's 8 million reasons why that money isn't there. When Mr. Jenkins opened it up, they said, well, he looks like he's not whatever, so we're going to take it and put it in this drawer or put it in that drawer. All I'm saying is if they admitted, yes, we did this and that and this and that, fine. But they didn't. They're just speculating that, well, he didn't get his money, so it must be our fault that 7 1⁄2 and we're done. But there's zillions of reasons why they didn't get the money, in my opinion. And the other thing is the fiduciary duty I talked about, and there's records that we have that's so voluminous put in the IRA agreement. They are a trustee. They have fiduciary duties. They are there to do things for us, like Mr. Jenkins. And he's an account holder for 40 years with two other three accounts, sitting there. They know where he is. He stops me every once in a while, and I don't want to get off the track. But the simplest I could make it was we have a contract. You were to give us the dough. Why didn't you give it to us? Don't say, well, you did this or that. Tell me what it is. And the other thing that just is important to us, and I must say, I'm arguing not very well for the seniors, because they get articles all the time from everybody. Take advantage of them. Not the topic for this. But why didn't we get discovery? I don't want to listen to myself talk, much less cross-examine anybody. But when you come in, what did you do with it? We don't have records. What do you mean you don't have records? Why did you give us records then from 1999? Where did they come from? Why are they redacted? Who made them? Can I have a crack at least asking basic questions? Why, in two years, four motions to ask for discovery denied with no question. How would that change the statute of limitations? Well, if we can find it, maybe we'll find it. And the guy who's stopping this is not with the bank anymore. I shouldn't say that, but I'm telling you that. from the FDIC, from any of those agencies, state's attorney's office, happy to take your name and your phone and your pledge, but they don't want to do anything. You asked yourself a question, or whatever, about what would this show about the statute of limitations. So answer that question. What would discovery show about the statute of limitations? How would that bring your case within the statute? Good question. Thank you very much. It would have shown what happened. In the day when Mr. Sudeikis came in, what does he do? He fills out this list, and the next day we send him all these papers. And then what do you do? Then we go and we make arrangements to take his savings of $2,000 on two occasions. We put it here, we invest it here, we do this. And then we have, and where are any of them? How did you find records from 18 years ago? Where are they? Who followed them? Where are they? Why are they redacted? And then you say, well, that's the evidence that he withdrew his money. It's not, you have to be a mathematician, but that isn't what the money would be in the kitty. There's no indication in the documents, two of them, maybe it was one that was redacted, that that was what that was for. I think it gets, I hate to be a gibber and say we go back to the basics, but that's my opinion. We gave the money, trusted the money to you, we come for it, we have no records. I know that's pretty simple. When did the cause of action arise? Pardon me, ma'am? When did your cause of action arise? I think it arose when we discovered it, when we went in. And I can't remember the year, but it was about a year or two before we filed the lawsuit. So we went in. When you discovered the breach as opposed to when a breach, if at all, occurred. Well, I agree with you posed that way, but a breach occurred at all. And I think the discovery rule applies because we didn't know until we disclosed to the bank and said, well, where's our money? And they said, we don't have it. Wouldn't the discovery rule apply when he turns 70 and a half and knows by virtue of that contract that he's read over or is deemed to have read that it says at 70 and a half certain things happen? And a couple of things on that. We tried, best we could, an adhesion contract. We looked through the documents and all that. Well, it says 70 and a half many, many, many, many, many times. I agree with your suspense, but it's buried in the file. There's not anything around it. And that's not my greatest excuse. The greatest excuse is so you didn't do something. Is that a material breach? Where's your money? The point is, where's your money? And I don't know the answer. But if I would have had some discovery, I would have known. What would the discovery have told you? Pardon me? What would the discovery have told you? We would have certainly looked for the procedures at hand. And I would ask, how many IRAs do you have? Do all of them, are all of them absent records? What happened when you sold your bank four times? I wanted to get the auditing records when they come in. You're going to buy one bank and the other bank, they list every account as a liability, where do those records go? And it's just unfathomable to me. And not only that, but it could happen to anybody. I mean, one of the questions the court asks is, well, you should be coming in here and getting money. What I heard and what my own philosophy is, you put that money in so your kids have college so you can pay for your cancer surgery when it comes. You're not in and out of an IRA account all the time. So, you know, once you reach the age of 70, you're in and out of it quite a bit. Right? Well, yes. You have to be. The IRS gives you guidelines. Right. And then if you're married and your wife, you differentiate that. But I think the Gibran approach is we gave you the money, our contract says you'll give it to us. Why didn't you give it to us? Because you didn't do something at 70 and a half. Is it comparative negligence? Is it some other kind of a document? I don't know. Where are the records? And how did you see the problem is I feel like I'm doing a Washington inquiry there. Where did you get the records you gave us? Did they come from heaven or something? Let me ask you about that. I don't know. It's just that's a stupid thing to say I don't know. But it's very, very troublesome and bothersome that there's no records. And that was our contract. I mean, bailments and all. If you want bailment, there's no bailments. Well, how did we know? We gave $2,000 in that IRA, which we never know what they did with it. It could have been gold certificates or sure stock or something. So we are entitled to get the things back in kind. And I can't argue that validly because I don't know what they did with their money. And the fiduciary, all over their papers, we're the trustee. We're the fiduciary. We'll take care of you. What did they do? What did they do when it's 70 and a half? You know? Nothing. And not even a note. Oh, well, then it's distributed to the state. We check with the state. They don't put it in the state. It's all online. You can take knowledge of that. There's no disbursement to the state. It's just so I think the way I got through it was we gave you the money. We've asked for the money. There's no conclusion that says when you can or can't ask for it. Yes, you might have been able, you might have made it a withdrawal back when you're 70 and a half. That's not the whole extent of it. It's very limited, especially when you've got a difference of age of your wife. So what? All right? We didn't do that. That's our problem. Where's the other 100 and whatever thousand? The emphasis I make is if it's not renewed, then it stays at the same rates, which is like something at 10 and 8 percent. I mean, we ran those out, and they're in six-figure numbers, both accounts. So where's the doubt? Just give us an answer. And I did need to know their procedures to say is this just an anomaly? Why is there a bond? You all have a chance for a rebuttal then. Well, thank you very much for your time. My sincerest, sometime I can mention it. Thank you very much for receiving me. Of course. Counsel, are you prepared? Yes, ma'am. You may begin when you're ready. My first question to you is are you old enough to know who Abe Gibran is when he makes Abe Gibran references? Sorry, I do not understand the reference. I didn't think you were old enough to know who Abe Gibran is. Maybe I'm old enough that I should, but I didn't get that one. May it please the Court, Firstman West asks that this Court affirm the decisions of the Circuit Court of Lake County which correctly dismissed plaintiff's claims based on the straightforward statute of limitations issue. I think many of the issues I intend to discuss have already been raised, but as the Court has noted, the contracts themselves, the accompanying disclosure statements, they all make very clear that their funds must be distributed by the year in which the plaintiff turns 70 1⁄2. The plaintiff was born September 1929, turned 70 1⁄2 in 2000, so putting these pieces together, there's no dispute that by December 31, 2000, the contracts required the defendants to give the plaintiff the money from his accounts. There's some issue of the documents, and some documents apparently were reproduced when some documents were apparently destroyed. Yes. There is a reference made many times in the trial court and today to a document on page C-263 of the record. It is a 1099-R journal that the bank was able to find in its records that shows that retirement account distributions were made to Mr. Stulgenskis in the year 1999. Mr. Stulgenskis has previously noted that he has questions about how it was found, the manner in which it was preserved, what redactions mean, and all of that sort of thing. I believe that would be an important document if this case were to proceed to trial on the merits, but it doesn't have anything to do with the statute of limitations. Mr. Stulgenskis' counsel was given many opportunities in the trial court to explain what answers could possibly come up at the deposition that he sought relating to that document and how it would affect the statute of limitations. And as you are today, the answer then was it could be embezzlement, it could be any number of different reasons why the money was not paid. But as the trial court correctly noted, what difference does that make? The obligation was to disperse the funds. And for the avoidance of doubt, there's been no factual predicate for any allegations of embezzlement or anything like that. But just taking that argument on its face, no matter what the answer is, the obligation is contained in the contract. The reason that the money was allegedly not distributed might be relevant at a trial on the merits, but it is not relevant to the statute of limitations. When did the cause of action arise? The cause of action arose on January 1st, 2001. If it were true that the accounts, funds from the account were not distributed by the year in which he turned 70-and-a-half, that would be by the end of December 2000. So on January 1st, 2001, the plaintiff had the opportunity to seek the aid of court in remedying this alleged breach of contract. You heard reference to the argument that perhaps the bank did give him the money, that the bank has not come forward and admitted in opposing counsel's words that we did not distribute the money. As I think is clear from the brief, we believe that we did distribute the money, but there is no speculation involved in getting to the point at which the contract requires, by the end of 2000, that the funds be distributed. That's apparent from the face of the documents and from the plaintiff's date of birth. It is our position that he was paid. It is his position that he was not.  There's no indication in the record that the plaintiff made an election as to how the distributions were to be made? That's correct, and it's been the plaintiff's position throughout this litigation that he took no action with respect to the accounts until 2016. So this would have been a lonesome distribution on that date? That's correct. What about his argument that the discovery rule should apply here? Well, I would say that his argument is not quite that the discovery rule should apply, because if it were the discovery rule, then it would be objective, and he would be charged with knowledge of the contract, and it would apply on January 1st, 2001. Whether or not the discovery rule is said to formally apply, and he is charged with knowledge, and he knows on January 1st, or whether it does not apply because he is charged with knowledge as a matter of law, is a little bit academic. But whether it's applied or not, four times the bank told him in the IRA agreements and the disclosure agreements that the obligation was to begin disbursing the funds by the age at which he reached 70 1⁄2. If he did not do so, he would get a lump sum payment for that entire amount. That obligation is also contained within federal law. I think as the trial court ---- So the presumption, then, is that you complied with the law? Yes, the presumption is that ---- Yes, the plaintiff is charged with knowledge that the contract contains this obligation. Presumably, the plaintiff would know if he received the money or not, and would know all of the elements necessary to invoke the aid of the courts if that was appropriate. I think as the trial court made clear in some of the oral arguments relating to this issue, the plaintiff's view of the discovery rule that it should only apply based on actual subjective knowledge would essentially vitiate the statute of limitations. The trial court suggested, what if your client only learned of this in 2040? Is that when the clock would begin to run? And that was plaintiff's position, that we could have litigation on a 10-year statute of limitations in 2050 concerning a breach of contract that was apparent from the face of the contract itself on January 1st, 2001. One point I wanted to raise in response to an argument from counsel is that I believe he said that with respect to the bailment claim, I believe he said that the plaintiff's logisticus would be entitled to return the funds in kind. I would say that that is not the position that the plaintiff made in the opening brief, where he wrote, the defendants correctly argue that he would not be entitled to return the actual funds he had originally deposited. That's on page 19 of the brief, and that concession standing alone is sufficient to resolve the bailment claim. Unless the court has further questions, I do not have... Well, one of the arguments as it relates to the discovery rule is that this was an adhesion contract that these terms were buried in. I would say, first, that's... The argument that these were buried in the contracts is not supported by the record. These provisions were available on the first page of the agreement. Second, the adhesion contract argument was one that the trial court found was waived because it was not briefed and brought before him, so he was not able to assess that argument. It was raised orally for the first time on August 9th of 18th, at the hearing. That's correct. That's correct. And the trial court took the position that because it had not been briefed, he was not able to address that argument. And as a result, we would suggest that that means it has been waived. But in any event, it's not true factually that these provisions were buried. They were on the face of the agreements. But it's also not sufficient because an adhesion contract, even if that were assumed, even if it were argued, assumed, and everything else, it still has to be unconscionable to be unenforceable. And all this provision does is effectuate federal tax law. It is the mechanism by which these IRA accounts are available to the public. It is in exchange for the IRS agreeing to let you defer some of your taxation. You have to start taking it out in retirement so that these don't just become a vehicle for people to pass on funds intergenerationally without any taxation. So to effectuate federal law does not make a contract procedurally unconscionable. And whether or not an IRS form agreement would require any sort of or would be unconscionable I think would require substantial briefing, and that issue is not raised below, so it could not be done by the parties. Thank you. Counsel, do you wish to reply? I think you said what you want. I just want a deposition. I want to have some discovery. And I think by not having that, that is it. We can all speculate, oh, Jay did this. He says he didn't do it. Where's the proof? How do I know I don't have access to any of this? What is your procedure at the time? What do you do with the money? Do you give it to some investment banker? I mean, there's absolutely no excuse. I never had a case in X years of practice where I didn't get a deposition. This is right out of the box. We want the risk managers, the deposition. Also, no, it's briefed. It's in there. I have the briefs in the car, which are somewhat memorized. But we raised that adhesion contract throughout, and that's just observable whether I point it out now or not. I mean, it is buried. Did you raise it in the trial court? Sure, yes. Other than orally? It's in writing. I'm sorry, but it's somewhere near the back that I was reading. It's in there. And, in fact, they say, you know, well, you know more about adhesion contracts. But, again, I can eliminate all that from our concerns, if I may, and just say why don't you let under 201 him take discovery, full access. Article 12 of our Illinois Constitution, you claim you're wrong. Maybe you're not wrong, but you should have some remedy in our courts. You know, might as well go across the sea there. And Rockethead says, well, you know, you're not coming next time to the tournament because we're going to shoot you. I mean, why don't we have access to that discovery? What harm can that do? Three hours limited to two. I will be able to discern at that time, what did you do with the records? Who did he give it to? He gave it to Susie. What did she do with it? Well, she held it for three weeks, and then she pocketed over it. I don't know. But the point is, they're getting their remedy by speculation and conjecture. Even today, for 18 minutes, they never said, oh, yes, we didn't do this. We didn't do that. It's just speculation and conjecture. No one can win the summary judgment, I think, unless there's facts. Also, I think, as I'm perusing around, there's law, and I suppose it goes either way. Isn't it a fact question when the discovery was, there's law to that effect I've quoted? When did you get it? Not one document from the bank. They're the multi-million dollar organizations. Why don't you give me the discovery when you transferred it three times? Why don't you let me have the audits? Why don't you let us look and see what it is? And if it is our transgression, we're here to admit it. We don't want to be doing this for three years and getting money, but it's a man's life savings. It's a wife's life savings. And all he, you know, we're not going to decide if the death penalty is still valid or not valid. Give him a deposition. Why doesn't he get a deposition? How could he cure it? I don't know. It's not. That's why we have discovery. When I, you know, returned to work at Yale-Gent Bank where I was an apprentice for years ago, I would probably know that. Anybody knows that, but they won't give me that information. What's so damning, what's so harming to them that they refuse to give us that? So if it's fiduciary, if it's a state, who cares? Just let us get to some disputed issue as to what happened. When I leave and when we leave and you say, boy, he's out of here, what does anybody know what happened to the money? To quote another movie, you know, show me the money. You took my money.  And what do you mean $19,000? There's nothing. Look at the three papers. One of them is completely redacted. There's no reference that anybody can see that it has anything to do with Mr. Sojunkas. It's all crossed off. What does $9,000 mean? Where are the records that show at that time after how many years and the 10 percent he would have earned this? We don't know what that is, and we can't discern what it is anyway because it doesn't reference an account, to my knowledge, or what it was for. Well, that was because he did the IRA. Well, is that all the IRA? Maybe you have proof that you're going to win this case, right, that there was $9,342 in there and that cleaned it out? Did he withdraw everything? They don't have that. They just found that. That's what bothers me. Yes, sir. Maybe you misspoke when you said give us discovery so we can get to a disputed issue. I mean, you just said that a second ago. That's putting the cart before the horse. Don't you have to have a disputed issue before you get to discovery? I agree. There's no issue of dispute based upon the record before the trial judge and before us. There's no need for discovery. And you're correct. The discovery rule is generally a question of fact, but it can be a question decided by the court without any factual input if the record clearly shows when discovery occurred or reasonably should have occurred. Thank you, and I appreciate that. But I think you said if it reasonably shows, including I challenge anybody to look through 2,000 pages there and show us where it clearly shows that either he took it out or they did what they were supposed to or they didn't do what they were supposed to. That's the only three hours of time or two hours of time so we can figure out what the procedures. Are we the only people of the bank's customers that you don't have records? And what about those audits when they come in and sell? That other bank knows exactly what's in there. Why don't we have access to them? And with discovery, the discovery I don't think respectfully, I'm not saying I get the discovery and I have everything I need for my case, but I'm saying I don't have any of it so I don't know. I'm not the bank. And when you folks think about your careers and your situations, you know, you're going against Sears Bank, okay? How do we know I have it and they won't tell us anything? That's the issue I have. So no statute would ever, in justice, in fairness, under Article 12 of the Constitution, under Supreme Court Rule 201, give us discovery. Why do I have to go six times and ask for a deposition? And if it comes up with nothing, hooray, I'm not that stupid. We're going to drop the case, but I can't go into the inner workings of that bank. All right, counsel, well, your time is up, and we appreciate your time. Thank you so much for your time. And again, there's not enough to save Laura Emily. It's happened to everyone. There's more than three minutes and 23 seconds. Thank you very much. Thank you.